HEARD APRIL TERM, 1874.

### AIKEN *vs.* TELEGRAPH COMPANY.

Where a telegraph operator made a mistake in transcribing a message received at his office and delivered the next day, his admission of the error, made several days afterwards, is not evidence against the company—it being no part of the *res gestæ.*

There is sufficient privity of contract between the receiver of a message by telegraph and the company to enable the former to maintain an action against the latter for negligence, although the price of transmission was paid by the sender.

Express stipulations in the contract for transmission bind the receiver as well as the sender.

The analogy between common carriers of goods and common carriers of messages is not perfect, and their responsibility differs in a manner corresponding to the difference in the nature of the services they perform.

A contract by a telegraph company, made in pursuance of a regulation in reference to messages sent " during the night, at one-half the usual rates," contained a " condition that the company shall not be liable for errors or delays in the transmission or delivery, or for the non-delivery of such message, from whatever cause occurring, and shall only be bound in such cases to return the amount paid by the sender. No claim for refunding will be allowed unless presented in writing within twenty days:" *Held,* That the regulation was reasonable, and the condition binding upon the receiver of the message.

The condition was not intended, it seems, to exempt the company from liability in case of negligence, nor in such case to limit the liability to the sum paid for transmission.

In such a case it is not error to refuse to instruct the jury that the company is not liable for an error in transmitting the message, unless it arose from fraud or gross negligence.

BEFORE MACKEY, J., AT FAIRFIELD, MAY TERM, 1873.

This was an action by James R. Aiken against the Western Union Telegraph Company, to recover damages sustained by reason of an error in the copy of a message as transcribed and delivered to the plaintiff by an agent of defendant.

The case, as stated in the brief, is as follows:

James R. Aiken, the plaintiff, was sworn as a witness on his own behalf, and testified—

Witness is a cotton buyer, and has dealt largely in cotton, especially since the war. Winnsboro is a considerable cotton market. There is more cotton sold here than in Columbia. On the following day after its date, about a quarter past eleven o'clock, witness received from the operator of defendants, at Winnsboro, the following telegram, [with the heading printed in red ink]:
" No. 44.

"HALF-RATE MESSAGES.

"The Western Union Telegraph Company require that all messages received for transmission shall be written on the blanks of the company, under and subject to the conditions printed thereon, which conditions have been agreed to by the sender of the following HALF-RATE MESSAGE.

"O. H. PALMER, Sec'y.          "WILLIAM ORTON, Pres't.
" Dated Baltimore, Oct. 12, 1870.
" To James R. Aiken, Winnsboro, S. C.:

"We are offered fifteen five-eighths one hundred low middling, October or November.          "J. I. MIDDLETON & Co."

Witness at once telegraphed to J. I. Middleton & Co. that he would accept the offer. Witness ascertained, for the first time, on 19th October, by letter from J. I. Middleton & Co., that there was a mistake in the telegram ; that it should have been fourteen five-eighths. Seven days after the receipt of the message, the operator at Winnsboro admitted to witness that it was his mistake, made in transcribing the message.

The counsel of defendants objected to the declarations of the operator as incompetent and inadmissible against the defendants, but the Court held the declarations admissible, and the defendants duly excepted.

Witness felt bound to fulfil the contract at fourteen and five-eighths, and purchased one hundred bales of cotton at fourteen and seven-eighths, to fulfil the contract. He shipped thirty bales the next day, and the balance afterwards. When the mistake was discovered it was too late to undo the contract. Middleton & Co. endeavored to do this, but could only get an extension of the time in which to fill the order. Middleton & Co., also considering the hardship of the case, charged no commissions. The loss sustained

by witness amounted to three hundred dollars and eighty cents, being the difference between the net amount received under the contract for cotton sold, and the amount paid for cotton bought. If plaintiff had been obliged to fill the order according to the time, and paid commissions, his loss would have been seven hundred dollars.

Being cross-examined, witness testified as follows :

The telegram delivered to witness, of date 12th October, 1870, from J. I. Middleton & Co., was written on the company's blank, with the printed matter at the top, in red ink. Witness knew the telegraph company, by their regulations, exempted themselves from liability for mistakes in half-rate messages which were not repeated, but thought these regulations were not valid. At the time the mistake occurred in the telegram from Middleton & Co., witness was receiving telegrams every day from New York and Baltimore, giving the price of cotton. Witness kept well posted in the cotton market. At the time of receipt of despatch from Middleton & Co. witness thought fifteen and five-eighths (15⅝) a fine price ; thought fourteen and five-eighths too low ; fifteen (15) would be about right. Low middlings were selling at Winnsboro, on 12th October, 1870, for more than fourteen and five-eighths. Witness made the contract with J. I. Middleton & Co. They made the offer for other parties — spinners. Witness did not know what their names were. Witness, being shown by defendants' counsel the following original despatch, with the printed matter at the top in red ink, said the signature of J. I. Middleton & Co. was genuine :

"No. 45.        " HALF-RATE MESSAGES.

"The Western Union Telegraph Company will receive messages for all stations in the United States, East of the Mississippi River, to be sent during the night at one-half the usual rates, on condition that the company shall not be liable for errors or delay in the transmission or delivery, or for non-delivery of such messages, from whatever cause occurring, and shall only be bound in such case to return the amount paid by the sender.

"No claim for refunding will be allowed, unless presented in writing within twenty days.

"O. H. PALMER, Secretary.      " WILLIAM ORTON, President.

"BALT., 12th Oct., 1870.

"Send the following message subject to the above terms, which are agreed to :

"To James R. Aiken, Winnsboro, So. Ca.:

"We are offered (14⅝) fourteen five-eighths (100) one hundred low middling—October or November.

"J. I. MIDDLETON & Co."

Figures in despatch crossed with pencil mark. Endorsed on despatch : "13 words. Paid 90 cents."

Witness demanded damages shortly after finding out mistake in telegram.

The plaintiff here rested, and the defendants' counsel moved for a non-suit, on the following grounds :

1. That there was no privity of contract between the plaintiff and the defendants, and nothing in the evidence to make the defendants liable to the plaintiff.

2. That the original message was written by J. I. Middleton & Co., the senders, upon a blank under a printed heading, which stated the terms upon which half-rate messages were received, to wit : "to be sent during the night at one-half the usual rates, on condition that the company shall not be liable for errors or delay in the transmission or delivery or for non-delivery of such messages, from whatever cause occurring, and shall only be bound, in such case, to return the amount paid by the sender," which terms were agreed to by said J. I. Middleton & Co.

3. That the plaintiff had due notice in the printed heading on the blank upon which the message delivered to him was written, that said message was sent as a half-rate message, was written on a blank of the company, under and subject to the conditions printed thereon, and that said conditions had been agreed to by the sender ; and plaintiff, in his testimony, admitted his knowledge of the regulations of the company.

4. That the essential element to constitute a valid contract, to wit, the union of the minds of the contracting parties upon one and the same proposition, was wanting in this case.

5. That if any valid contract, binding upon the plaintiff, was made, it was the sale of one hundred bales of cotton to J. I. Middleton & Co. at fifteen and five-eighths (15⅝).

6. That plaintiff, being a large cotton buyer, posted as to the New York and Baltimore market, by daily telegrams, in at once acting upon the receipt of a half-rate message, which contained a mistake of one cent per pound in the price offered for one hundred bales of cotton, did not manifest the care and prudence which an

ordinarily prudent and intelligent business man should exercise, and was guilty of such negligence as bars a recovery in this case.

[The Court denied the motion on all the grounds, and the defendants excepted.]

The defendants then called S. K. McDonald as a witness, who testified :

Witness is the operator of the Western Union Telegraph Company in Winnsboro, and was at the time the telegram, of date 12th October, 1870, from J. I. Middleton & Co., to the plaintiff, was received. It was received and transcribed in the night. Four despatches were received that night. Witness received the despatches with an instrument called "The Register," which makes the characters with a small pen or needle. Witness does not recollect whether the impression, when he mistook fourteen for fifteen, was distinct or not. When, several days afterwards, he understood there was a mistake in the despatch, he saw, upon examination, that he had made the mistake in transcribing. The following characters, .—. . . ..— . .. — . . —., represent fourteen, and the following, .—. .. .—. — . . —., fifteen. There is as great a variety and difference in the telegraphing of operators as there is in the manuscript of individuals. The despatches of some are difficult to read. The despatch in question was a half-rate message. Witness was new to the business; did not have much experience at that time.

The defendants requested the Court to charge the jury—

1. That telegraph companies cannot, in law, be held to the strict liability of common carriers.

2. That a regulation to the effect that the telegraph company shall not be liable for errors or delay in the transmission or delivery or for non-delivery of messages to be sent during the night at one-half the usual rates, and not repeated, is reasonable and valid.

3. That the telegram, in this case, being sent on such conditions, which were agreed to by the sender, and of which the plaintiff had notice, the defendants are not liable for damages arising from an error in the transmission or delivery of said telegram, unless arising from the fraud or gross negligence of the defendants.

4. That, even if the defendants were guilty of gross negligence, if the plaintiff, by the want of such caution and prudence as a man of ordinary prudence and intelligence should exercise, or in any way, by his negligence, contributed to the damages he sustained, he cannot recover.

5. That the contract, if any, made by Middleton & Co., through the defendants, as their agents, with the plaintiff, was for the purchase of one hundred bales of cotton, at fifteen and five-eighths cents per pound, and the plaintiff has not sustained any damage which the defendants are liable for, as the plaintiff had his remedy upon his contract against Middleton & Co.

The requests were all refused, and the defendants excepted.

The case was then submitted to the jury, who found for the plaintiff $300.80.

The defendants appealed.

*Robertson, McCants & Douglass,* for appellants :

The declarations of the operator, made seven days after the receipt of the telegram, in reference to the mistake, and not, therefore, constituting part of the *res gestœ,* were incompetent and inadmissible against the defendants.—*Robinson* vs. *Fitchburg & Wis. R. R.,* 7 Gray, Mass., 92 ; 1 Green. Ev., §§ 113, 114; Story on Agency, §§ 136, 137 ; *Cortland County* vs. *Herkimer County,* 44 N. Y., (5 Hand,) 22.

The Court erred in refusing the motion for non-suit, made by the defendants at the close of plaintiff's testimony—

1. There was no privity of contract between the plaintiff and defendants, and nothing in the evidence to make the defendants liable to the plaintiff.

(*a.*) The legal relation of these parties is to be inferred from the fact that the defendants delivered to plaintiff a despatch. This fact alone is insufficient to raise a privity of contract between plaintiff and defendant.

(*b.*) Whatever contract existed as binding upon the defendants, was made and performed, whether well performed or not, before the plaintiff came into any relation with the parties to the transaction.— *Gray* vs. *Ottolengui,* 12 Rich., 101 ; *Winterbottom* vs. *Wright,* 10 M. and W., 109.

(*c.*) Even in the case of a common carrier of goods, where the vendor pays the freight, and selects the mode of conveyance, it is held that he must stand to the risk of the delivery of the goods, and is the proper party to bring the action for their loss or damage; but where the vendee is to pay the freight, and selects the mode of conveyance, he is the proper party to bring 'the action. Here 'the charge for transmission was paid, and the risk

of the correct transmission of the telegram was assumed by J. I. Middleton & Co.—*Goodwyn, Harrington & Co.* vs. *Douglas*, Chev., 175.

2. The original message was written by J. I. Middleton & Co., the senders, upon a blank under a printed heading, which stated the terms upon which half-rate messages were received.

(*a.*)˙ The message delivered to plaintiff was written upon a blank which, in its printed heading in red ink, notified him that it was a half-rate message, and that the conditions upon which the defendants received and transmitted such messages had been agreed to by J. I. Middleton & Co.

(*b.*) The plaintiff also admits, in his testimony, that he " knew the telegraph company, by their regulations, exempted themselves from liability for mistakes in half-rate messages which were not repeated."

In *McAndrew* vs. *Electric Tel. Co.*, (33 Eng. L. and E., 180,) held that the condition, " the company will not be responsible for mistakes in the transmission of unrepeated messages, from whatever cause they may arise," was either " a reasonable regulation," within the meaning of the Act, 16 and 17 Vict., or such a reasonable condition as the defendants, from the nature of their business, might impose on their customers.

It is held, also, in *Western Union Telegraph Company* vs. *Carew*, (7 Amer. L. Reg., 18, and 15 Mich., 525), that such regulations are reasonable and binding on those dealing with the company.— *Breeze & Mumford* vs. *United States Tel. Co.*, 31 How. Pr. R., 86; *Camp* vs. *U. S. Tel. Co.*, 1 Metcalf, (Ky.,) 154; *Ellis* vs. *Am. Tel. Co.*, 13 Allen, (Mass.,) 226; *Playford* vs. *U. K. Tel. Co.*, L. R., 4 Q. B., 706.

(*c.*) There is no proof of negligence on the part of the defendants, except the admission of the operator, that he made the mistake in transcribing the telegram. The mere fact that the operator misunderstood certain telegraphic characters is no proof that he did so negligently.

3. The essential element to constitute a valid contract, to wit, the union of the minds of the contracting parties upon one and the same proposition, was wanting in this case.—*Kinghorne* vs. *Montreal Telegraph Company*, 18 Upper Canada R., 60; Chit. on Con., 9; *Scranton* vs. *Booth*, 29 Barb., (N. Y. R.,) 171; *McCotter* vs. *Mayor and Aldermen of New York City*, 37 N. Y., (10 Tiff,) 325.

4. If any valid contract, binding upon the plaintiff, was made, it was the sale of one hundred bales of cotton to J. I. Middleton & Co., at fifteen and five-eighths.—2 Red. on Railways, 282, 283, ¶¶ 5 and 6: *Durkee* vs. *Vermont Central Railway*, 29 Vt., 127; *Trevor* vs. *Wood*, 36 N. Y., 307; *Rose* vs. *U. S. Tel. Co.*, 34 How. Pr. R., 308.

5. The plaintiff being a large cotton buyer, posted as to the New York and Baltimore markets, by daily telegrams, in at once acting upon the receipt of a half-rate message, which contained a mistake of one cent. per pound in the price offered for one hundred bales of cotton, did not manifest the care and prudence which an ordinarily prudent and intelligent business man should exercise, and was guilty of such negligence as bars a recovery in this case.—*Rathbun* vs. *Payne*, 19 Wend., 399; *Munger* vs. *Tonawanda R. R. Co.*, 4 Coms., 359; *Conlin* vs. *City Council of Charleston*, 15 Rich., 201; *Williams* vs. *Holland*, 25 E. C. L., 261; *Hawkins* vs. *Cooper*, 34 E. C. L., 485; *Wilds* vs. *Hudson R. R. Co.*, 24 N. Y., 430; *Button* vs. *Hudson R. R. Co.*, 18 N. Y., 248; 1 Allen, (Mass.) R., 187.

The Court erred in refusing to charge the jury that telegraph companies cannot, in law, be held to the strict liability of common carriers—

1. The strict liability of carriers, on the ground of public policy, is limited to common carriers of goods, and does not attach to passenger carriers even, and cannot be made, by any reason of analogy, to cover this new sort of bailees—telegraphers.— *Nolton* vs. *Western R. R.*. 15 N. Y., 446; *Breese & Mumford* vs. *U. S. Tel. Co.*, 31 How. Pr. R., 92.

In the case last cited, Judge Johnson, who delivered the opinion, says: "I cannot refrain from observing here, that the business in which the defendant is engaged, of transmitting ideas only from one point to another, by means of electricity operating upon an extended and insulated wire, and giving them expression at the remote point of delivery, by certain mechanical sounds, or words, or single letters of the alphabet, is so radically and essentially different, not only in its nature and character, but in all its methods and agencies, from the business of transporting merchandise and material substances from place to place, by common carriers, that the peculiar and stringent rules by which

the latter is controlled and regulated can have very little just and proper application to the former.

2. The liability of telegraph companies is regulated by contract and such reasonable rules as they may make for the conduct of their business.—*Breese & Mumford* vs. *U. S. Tel. Co.*, 31 How. Pr., 86.

In the *Western Union Telegraph Company* vs. *Carew*, 7 Am. L. Reg., 18, (15 Mich., 525,) Judge Christiancy, who delivered the opinion of the Court, says: " We are all agreed that telegraph companies, in the absence of any provision of statute imposing such liabilities, are not common carriers, and that their obligations and liabilities are not to be measured by the same rules; that they do not become insurers against all errors in the transmission or delivery of messages, except so far as by their rules and regulations, or by contract or otherwise, they choose to assume that position, or hold themselves out as such to the public, or to those who employ them.

In *Birney* vs. *N. Y. & Wash. Prin'g Tel. Co.*, 18 Maryland, 341, it is held " that a telegraph company is not a common carrier, but a bailee, performing, through its agents, a work for its employer, according to certain rules and regulations, which, under the law, it has a right to make for its government."

The Court also erred in refusing to charge the jury that a regulation to the effect that the telegraph company shall not be liable for errors or delay in the transmission or delivery, or for non-delivery of messages to be sent during the night at one-half the usual rates, and not repeated, is reasonable and valid.

(*a.*) It has frequently been held that a regulation to the effect that a telegraph company will not be responsible for errors or delay in the transmission or delivery of unrepeated messages, are reasonable and valid, *in cases where full rates were paid, and the messages were received for transmission during the day.* So held in *Western Union Tel. Co.*, vs. *Carew*, 7 Am. L. Reg., 18, 15 Mich., 525; *Breese & Mumford* vs. *U. S. Tel. Co.*, 31 How. Pr. R., 86; *Ellis* vs. *Am. Tel. Co.*, 13 Allen, (Mass.,) 226; *McAndrew* vs. *Electric Tel. Co.*, 33 Eng. L. and E., 180; *Camp* vs. *Western Union Tel. Co.*, 1 Metcalf, (Ky.,) 164.

(*b.*) *A fortiori* a regulation to the effect that the telegraph company shall not be liable for errors or delay in the transmission or delivery of messages *to be sent during the night, at one-*

*half the usual rates, and not repeated,* must be held to be reasonable and valid.

The Court erred, also, in refusing to charge the jury that the telegram, being sent on such conditions, which were agreed to by the sender, and of which the plaintiff had notice, the defendants are not liable for damages arising from an error in the transmission or delivery of said telegram, unless arising from the fraud or gross negligence of the defendants.—*Breese & Mumford* vs. *U. S. Tel. Co.,* (a case decided in the Commission of Appeals, in 1871, in 45 or 46 N. Y).

In *French* vs. *Buffalo, N. Y. and E. R. R. Co.,* 4 Keyes, 108, and cases there cited, it is held that where the liability of a common carrier is limited, by special agreement, the burden of proving that the loss was occasioned by the want of due care or gross negligence rests upon the plaintiff, and he cannot rely upon the absence of proof of diligence to support his allegations of negligence.

The Court also erred in refusing to charge that even if the defendants were guilty of gross negligence, if the plaintiff, by the want of such caution and prudence as a man of ordinary prudence and intelligence should exercise, or in any way contributed to the damages he sustained, he cannot recover.—*Rathbun* vs. *Payne,* 19 Wendel, 399 ; *Williams* vs. *Holland,* 25 E. C. L., 261 ; *Hawkins* vs. *Cooper,* 34 E. C. L., 485 ; *Wilds* vs. *Hudson R. R. Co.,* 24 N. Y., 430.

In *Ernst* vs. *Hudson R. R. Co.,* 24 How. Pr. R., 103, it is held by the N. Y. Court of Appeals that "the plaintiff must present a case of *unmixed* negligence—a case where the injury is the result, *exclusively,* of the defendant's negligence; where no negligence or default of his own contributed in any degree to producing such injury."

In *Lexford* vs. *Large,* 24 E. C. L., 394, Denman, C. J., says : "*If it is even doubtful* whether the defendant's negligence alone caused the damage, that will be sufficient to prevent a recovery."

Under the circumstances of this case, an exercise of common prudence and caution would have led the plaintiff to have the message repeated before entering into such a large transaction. A repetition would have detected the error.

The Court erred also in refusing to charge that the contract, if any, made by Middleton & Co., through the defendants,

as their agents, with the plaintiff, was for the purchase of one hundred bales of cotton, at fifteen and five-eighths cents per pound, and the plaintiff has not sustained any damage which the defendants are liable for, as the plaintiff had his remedy upon his contract against Middleton & Co.

*Rion*, contra :

I. Telegraph companies are held to the strict liability of common carriers, except in cases where the non-performance of a duty arises from some cause connected with the peculiar nature of the subtle agency employed in their business.—*Geo. W. True et al.* vs. *Inter. Tel. Co.*, 60 Maine, 16 ; 2 Red. on Rail., 287, and note ; Shear. and Red. on Neg., 626, 627, 628.

II. In this case the failure to deliver the correct message arose, not from any electric disturbance, but from the carelessness of the operator. The operator so acknowledged. The acknowledgment being of a matter pertaining to the subject-matter of his agency, and made while an agent, immediately after he discovered the mistake, binds his principal.—*Mattison* vs. *N. Y. Central R. R. Co.*, 62 Barb., 364. This acknowledgment of operator was concerning himself, and he afterwards testified to it in substance. ·

III. Telegraph companies may make reasonable regulations concerning the transmission of messages, but cannot avoid liability for their own want of care or skill in the performance of what they undertake.—*True* vs. *Inter. Tel. Co.*, 60 Maine, 17 ; *Graham* vs. *W. U. Tel. Co.*, 10 Am. L. Reg., 321 ; *Sweetland* vs. *I. and M. Tel. Co.*, 27 Iowa, 433, 1 Am. Reg., 291, 292 ; Shear. and Red. on Neg., 636, 637.

IV. The telegraph company is liable for acts of carelessness or negligence of their operator.—*Rittenhouse* vs. *In. Line of Tel.*, 44 N. Y., 265 ; *Graham* vs. *W. U. Tel. Co.*, 10 Am. L. Reg., 321.

V. The message, being a " night message," relieves the company from responsibility for no error not arising from its being a night message. The error in this case arose from the carelessness of the operator, in a matter in no wise dependent upon the time of the transmission of the despatch.

VI. The message not being repeated does not excuse the company. The mistake did not arise from the message not being repeated, for : (*a*) the message was correctly transmitted ; (*b*) night messages are not required to be repeated.— *Graham* vs. *W. U. Tel. Co.*, 10 Am.

L. Reg., 323 ; 2 Red. on Rail., 288, note ; Shear. and Red. on Neg., 638.

VII. The contract of the heading of the " red blank " cannot relieve the company from responsibility for an act of such gross negligence as is proven in this case. This exact point has been decided in the case of *Geo. W. True et al.* vs. *Inter. Tel. Co.*, (*supra.*)

VIII. Giving the defendants the full benefit of the contract, and they would only be relieved in case : first, of error in the transmission ; second, of delay in the delivery; third, of non-delivery. In this case the message was correctly transmitted, and there was only little delay in the delivery. The mistake arose from carelessness of the operator after the message had been transmitted and before delivery.

IX. The receiver of a telegram, when suffering the loss, may bring the action and recover damages.—2 Red. on Rail., 286 ; *Rose* vs. *U. S. Tel. Co.*, 34 How. Pr., 310 ; Shear. and Red. on Neg., 632.

X. No contributory negligence was proven. The price apparently offered could not of itself have put the plaintiff on his guard ; for if, in fact, he had received 15⅘, his profit on one hundred bales would have been less than one hundred dollars. The jury have settled this question.

XI: It is not error in a Judge to refuse to charge a proposition correct in the abstract but irrelevant to the facts of the case, and hence likely to mislead the jury. In such a case the duty of the presiding Judge is to refuse to charge as requested, and then to charge the jury by stating the same proposition so modified as to suit the case before the jury.

Oct. 2, 1874. The opinion of the Court was delivered by

WILLARD, A. J. The admission made by the operator employed by the defendants in transcribing and delivering the message in question was clearly inadmissible as evidence. It does not appear that such admission was made concurrently with, and so as to form part of, any act performed by the agent in the course of his agency ; but, on the contrary, that they were independent statements, not called for by the nature of his duties, and made several days after that was completed which constituted the alleged wrong on which the case rests. Statements of this character are entitled to no priv-

ilege, but are to be considered as hearsay merely.    It would follow that a new trial would have to result on this ground of error alone.

The propositions on which the defendants rely are that the plain-tiff has no right of action, inasmuch as he was merely the receiver of a message sent by another, who employed the defendants and paid the consideration for the performance of such service; and that, by the terms of the contract, under which the service was performed, the defendants are exempt from liability for any damage that may have resulted from an error in transcribing and delivering the message sent.

The plaintiff is a privy to the contract under which the service was performed, and has a right to demand due performance.    The contract in question is one of a peculiar class, as affecting questions of liability and privity arising under it.    It is a contract with one exercising a public employment under express statute powers cre-ated for that purpose.    The nature of the occupation of that class of persons, and the tender of their services to the community, makes them common agents for the transmission of messages for all persons who may desire and pay for such service, to any person, either as the final receiver of such message or as a means or agent for its further transmission.    The object of the contract is to modify and limit the contract which, by operation of law, would arise between the common carrier of messages and any person employing such carrier, in the absence of any stipulation of terms between them. The foundation of the contract is the nature of the carrier's occu-pation and the fact of employment.    The legal consequences flowing from such employment are what the special contract seeks to modify or limit.    Every such contract implies a sender of a message, a receiver, and an agent of transmission.    The nature of the contract is, in this respect, the same, whether the rights and duties of the respective parties are defined by operation of law, or by express stipulations between themselves.    It would, therefore, follow that the question whether the receiver of the message is a privy should receive the same solution, whether the contract is the result of the operation of law or of special terms of agreement between the parties.

The simplest form, then, under which the question of the privity of the plaintiff can be examined, is upon the assumption that a third person had delivered a message to the defendants for trans-mission to the plaintiff, in the delivery of which the plaintiff had a

pecuniary interest, and without the stipulation of any terms of transmission. In the case supposed would not the receiver accepting such service be bound to pay for it, and be entitled to demand due performance on the part of the carrier? Clearly he would.

The fact that the receiver had not directly conferred with the carrier as to the duty to be performed would be unimportant. The carrier who undertakes to carry for all dispenses with the necessity of knowing and dealing directly or personally with his employer. His offers of service are intended to meet the requirements of all cases where a message, in ordinary course, is to be transmitted. Such cases embrace those in which the message is transmitted for the benefit of the sender, those in which it is for the benefit of the receiver, and those in which it is for the mutual benefit of both sender and receiver. Construing his contract by the nature of the service to be performed, it is clear that the party for whose benefit the service is to be performed is to be regarded as considered and included in the obligation resulting from the fact of employment, whether that person stands to it in the relation of sender or receiver. If such is the conclusion where the compensation for the service is not paid until the service is performed, it cannot be altered by the fact that the service is paid for in advance, nor by the consideration as to which one of the parties included paid it. The time when a consideration is paid, and the person by whom paid, are not essential elements of the question, the parties to the obligation being clearly known by the objects intended by the contract.

It is equally clear that any stipulation of an express nature, intended to mould and limit the obligation, must be considered as attaching to the obligation in its fullest extent, and affecting equally all the persons related to it, either as sender, receiver or agent of transmission. Under this view of. the contract the plaintiff is entitled to enforce its provisions as a direct party in interest.—*Good- wyn* vs. *Douglass,* Chev., 174.

The regulation of the defendants, in conformity with which the terms of the contract limiting their liability was made, was a reasonable regulation, and such as the, defendants were authorized to make. In examining the proposition just stated, it must be borne in mind that the analogy between common carriers of goods and common carriers of messages is not perfect. The nature of the services performed differs materially in the two cases, and the real responsibility differs in a corresponding manner. The difference is

obvious, and has been frequently commented upon.—*Ellis* vs. *Tel. Co.*, 13 Allen, (Mass.,) 226. In this respect the refusal to charge that such a difference existed is open to the objection of leaving the opposite proposition, namely, that the responsibilities in the two cases are identical upon the minds of the jury as the law of the case.

In pursuance of the regulation in question certain conditions were printed upon the blanks, on which the sender of a message was required to write the message for transmission, and were so connected with the message, by language importing acceptance by the sender of the terms of such conditions, that the whole formed together a contract of which the conditions formed part.

The conditions were as follows :

"No. 45.

### "HALF-RATE MESSAGES.

"The Western Union Telegraph Company will receive messages for all stations in the United States, East of the Mississippi River, to be sent during the night at one-half the usual rates, on condition that the company shall not be liable for errors or delays in the transmission or delivery, or for the non-delivery of such message, from whatever cause occurring, and shall only be bound in such cases to return the amount paid by the sender. No claim for refunding will be allowed, unless presented in writing within twenty days."

The regulation in question did not relate to or affect the mode in which or the terms upon which the ordinary business of the defendants was conducted, nor could it affect in any way the right of parties who chose to pay the full rates, and transmit messages by day in the ordinary manner. Messages transmitted by day paid full rates, and were subject to certain specified conditions. The validity of the regulations relating to the transmission of day messages is not questioned in the present case. We must assume that had the sender of the present message sent it by day, he would, upon the payment of the ordinary or full rates, have been entitled to hold the defendants to the full measure of their legal responsibilities. The defendants were not bound to transmit messages during the night time. Had the validity of a regulation declaring that no messages should be transmitted during the night time been in question, it would be impossible to find ground for holding such a regulation unreasonable. There is no analogy among the rules, applicable to

persons exercising the class of employments to which the occupation of the defendants belongs, that would support a conclusion that such a regulation was unreasonable. So there is no legal necessity compelling the defendants to tender terms and conditions on which messages may be transmitted at half rates. If, then, the parties chose to contract in special terms as to a special and voluntary service of that character, they were at liberty to do so on any terms that might be agreed upon.

The general right of persons exercising this class of employments to vary their legal relations by special contracts is fully recognized, and cannot be questioned. The doubt that has affected cases of this class has arisen from attending circumstances, making it questionable whether the person entering into such special contract with the carrier did so voluntarily or by compulsion, arising out of the nature of the carrier's business. In view of the possibility of abuse of such powers it has been seriously questioned whether the power of demanding concessions from persons dealing with them in their business is within the legal powers of a common carrier. These questions have been complicated by the fact that the most important class of common carriers consists of corporations created for the express purpose of carrying on such business, and whose powers are such only as can be gathered from a fair and reasonable construction of the terms of the laws under which they exercise corporate rights. No principles have been recognized and applied to these various cases that would call in question the right of a common carrier to contract in special terms for a special service, out of the course of his ordinary duty, with a person who was at full liberty to deal with such carrier according to his customary terms of dealing.

In *McAndrew* vs. *Tel. Co.*, (33 Eng. L. and E., 180,) the right of a telegraph company, having express statute authority to make reasonable rules and regulations, to affix different rates for transmission according to the degree of risk involved, was affirmed, on the principle that a regulation tending to conform their rates of charge to the responsibilities assumed was in itself reasonable. The conditions in this case provided for an increased rate for repeated messages, and that they should not be responsible for mistakes in unrepeated messages. They also limited the liability of the company in all cases to a maximum sum, unless insured by an additional payment. There is no difference, in principle, between a

regulation increasing the ordinary rate of charge where certain de-
fined responsibilities are to be assumed, and a regulation diminish-
ing the ordinary charge upon condition of being relieved of certain
responsibilities.  The two cases are the same as to the bearing of
the present question.  The conditions in the case just cited did not
apply merely to a special service out of the ordinary course, like
that of transmission by night, but to all business transacted in the
ordinary course.  Had that characteristic been presented, additional
reasons would have appeared supporting the view of the Court.

*Ellis* vs. *Tel. Co.*, (13 Allen, Mass., 226,) holds the same view as
that taken in the last mentioned case.  In Massachusetts, it would
appear, the responsibilities of telegraph companies are regulated by
the statutes, and not by the common law.  It would be easier to
establish the proposition in question under the rules of the common
law, than in view of the Massachusetts statute, as given in that
case.  The right to establish a different degree of responsibility in
the case of repeated and unrepeated messages, attended by a differ-
ent rate of charge, is fully recognized.

*True* vs. *Tel. Co.*, (60 Maine, 9,) was a case of night messages
arising under the following conditions: " That the company shall
not be liable for mistakes or delays in the transmission or delivery,
or for non-delivery, of any message beyond the amount received by
the company for sending the same."  The message in that case was
not delivered, in consequence of the negligence of the company's
agent.  The question of liability under the terms of the contract
does not appear to have been discussed, but assumed by the
parties.  The Court considered the question of the reasonable-
ness of the conditions for the purposes of settling the question of
the rule of damages, from the standpoint of construing the contract
as " a general and unlimited exemption from all and any liability
beyond the sum paid," including all cases of neglect, want of care
or attention, of which the company could be guilty—" even gross
negligence, and the want of the lowest degree of care."  If this is
a sound construction of the contract, then clearly a regulation im-
posing such terms of contract upon all persons dealing with the com-
pany was an unreasonable regulation.

According to this construction the company reserved the right to
perform or not perform, to perform well or badly, upon the sole
condition that the price of transmission must be returned unless the
service was properly performed.  It is difficult to see how such a

construction could be arrived at, if that contract was subject to the general rule that contracts must be construed by the nature of the ends in view and the means contemplated for their attainment. The construction placed upon that contract does not appear to have resulted from any necessity growing out of the language of the contract. The object of the contract was a benefit to be derived by the sender through the performance of certain acts on the part of the carrier, compensated by a pecuniary consideration paid in advance by the sender. The language of the contract must be construed so as to effectuate and not defeat this object. If the contract bound the carrier to no exercise of good faith towards the sender, it is in no sense a contract, for nothing is a contract but that which is capable of creating a legal obligation, and when such obligation exists good faith is necessarily implied.

The contract cannot be regarded as in its nature determinable at the will of the carrier upon the condition solely of the repayment of the consideration money. By its clear terms the limitation of the sum that expresses the liability of the carrier is of such a nature as to import an agreed measure of damages applicable to a case of failure to perform properly. There is no language used importing that the repayment of the consideration should be regarded as a complete performance of the contract, nor is provision made for what would be essential in a contract determinable at the will of one of the parties, namely, an expression of that will properly notified to the opposite party. Again, the limitations as to damages applies itself to both the case of an improper performance and one of non-performance, showing that it was intended as strictly a limitation of damages as upon a breach of the duty imposed by it. Inasmuch, then, as it is now allowable to construe the language of a contract in such manner as to separate the obligation created by it from that which is necessarily to be implied from the nature of such obligation, and as good faith is implied in every obligation, it follows that the contract should have been construed in such manner that its provisions should leave unimpaired the obligation to exercise good faith, necessarily implied in the nature of the contract itself. It is, therefore, necessary, in order to perpetuate the life of the contract, to hold that a case of want of good faith is not within the terms of the contract, and that limitation of damages is not intended to apply to such a case, but must be restricted to the cases of non-performance or of improper performance, within the mind

and intention of the parties at the time of making the contract. Should this prove to be the true construction of the contract, the positions assumed as depending on the construction of the contract in the case of *True* vs. *Tel. Co.*, would not conflict with those assumed in the proposition under immediate discussion. *Sweetland* vs. *Tel. Co.*, (27 Iowa, 433,) while holding common carriers of messages to as rigid a responsibility as that enforced by *True* vs. *Tel. Co.*, arrives at its conclusions by reasoning of an opposite character to that in *True* vs. *Tel. Co.* It holds the regulation, which was the same, in substance and effect, as in *True* vs. *Tel. Co.*, reasonable, but puts a construction on the terms of the contract that excludes from the exemption clause all cases in which a want of due care and skill, either on the part of the carrier or his servants, has produced damage. In other words, it only allows the exempting and limiting clauses to extend to cases where, by reason of unavoidable accident or mistake, damage has occurred. It is difficult to see how this construction can be reached without disturbing the clear sense of the terms used by the parties. It is impossible to say that a contract would be without legal life and force where the parties had agreed that no damage should be claimed where such damage resulted from want of skill and care upon the part of the servants of the contracting party, providing such contracting party remained bound to use his best endeavors, in good faith, to secure an effective performance of the contract; nor would the contract be void, if known or confessed want of general carefulness and skill, on the part of one attempting to perform an act, should be recognized to the extent of requiring the party seeking the performance of the act to run the risk of mistakes occurring from either of these causes. In an agreement to perform an act by a person known to be unskillful, or in an unusual manner, or at an unusual time, such a clause would not appear to be inappropriate.

An agreement to perform an act implies, reasonably, that ordinary care and skill shall be exercised in its performance, but it is not a *necessary* implication, or one that is inseparable from the obligation, considering its nature. In order, then, to narrow the terms of the contract so far, within their primary sense, as was done in *Sweetland* vs. *Tel. Co:*, we cannot affirm that such a construction is a necessity, in order to save the life and efficiency of the contract. Nor does any other good ground for so narrow a construction appear. If, as undoubtedly is the case, a telegraph company can contract in

such a way as to be rendered liable in case of a damage resulting from the want of care and skill on the part of its servants, then it is very clear that they did so in the case under consideration. If, on the other hand, they cannot create a valid obligation without necessarily binding themselves to the exercise of good faith, then their contract should receive such construction as would be necessary to save it from becoming a nullity. Theoretical views of what would be the soundest policy in the relations between a telegraph company and the individuals of the community · are an unsafe guide in expounding the terms in which a particular individual has chosen to contract with such company. Legislation may possibly reach the proper adjustment, but in the end it will be effected in accordance with the interest of the parties and the convenience of the community, through the operation of natural causes, acting directly in the interest of the parties.

In *Rittenhouse* vs. *Tel. Co.*, (44 N. Y., 263,) the grounds upon which that part of the decision of the Court rests that related to the question of general liability, are not sufficiently stated to disclose the principles on which it depends. '

The weight of authority clearly supports the view already taken, that the regulation of the defendants, under which the contract was made, was, in its nature, a reasonable regulation, and the contract based upon it must be upheld according to the intent and meaning of its terms.

The principles that have been discussed have a restricted application to the present case, which will be stated. At the close of the plaintiff's case there was no testimony that was of sufficient legal force to authorize a verdict. Whatever should have been the character of the negligence established by the plaintiff's proofs, in order to warrant a verdict in his behalf, there was a failure of proof. The admissions of the operator being disregarded, the fact of an error in transcribing the telegraphic characters, and the consequent delivery of the erroneous message, is all that appeared to charge the defendants with a breach of their contract. The mere fact of the existence of an error in the message, as delivered, is not sufficient proof of negligence, as it may be reasonably referred to some cause within the terms of the exemption contained in the contract.—*Sweetland* vs. *Tel. Co.*, 27 Iowa, 433.

Subsequently, however, to the refusal of the Court to grant the motion for a non-suit the testimony of the operator was introduced,

to the effect that he "was new to. the business—did not have much experience at that time." This testimony afforded some degree of evidence of unskillfulness, sufficient, at all events, to prevent a nonsuit from being entered at the present time, though we are not called upon to determine its force for want of an exception directed to that point.

There was error in the refusal to charge. The first refusal has already been noticed. The second request to charge should have been allowed, as already has appeared. The third request narrows down the liability of the defendants to a case of fraud or gross negligence, and presents too limited a view of the defendants' responsibility. It is not essential that the act of negligence should be of the character to which the very indefinite term "gross" is usually applied, if it spring from disregard or indifference to what was due to the plaintiff. The fourth refusal to charge has no sufficient basis in the evidence, as there is nothing tending to show that the plaintiff has acted otherwise than carefully and prudently. The fifth request is based on the idea that the acceptance of the contract tendered by Middleton & Co. was not binding, as there was a mistake as to the terms of contract offered. If Middleton & Co. incurred obligations on the strength of the message of acceptance, there is no reason for throwing upon them the consequences of plaintiff's misfortune, whether arising from defendants' wrong or otherwise.

It is apparent that there should be a new trial ordered.

*Moses,* C. J., and *Wright,* A. J., concurred.