### ELSEY v. POSTAL TEL. CO.

*(Common Pleas of New York City and County, General Term.* December 3, 1888.*)*

TELEGRAPH COMPANIES—DELIVERY TO WRONG PERSON—LIABILITY TO RECEIVER.

> One who wished to order oysters of "P. Ellsworth," being unable to recall the name, directed a telegraphic message to "P. Elsey." On receipt at the office of delivery the message read, "H. Elsey," and the clerk, finding no H. Elsey in the city directory, delivered the message to John Elsey, who forwarded the oysters, which the sender of the message refused to accept, on the ground that his order was intended for P. Ellsworth. *Held*, that the telegraph company were liable to the receiver of the message for the value of the oysters, which had spoiled, and for the cost of transportation.

Appeal from First district court.

Action by John Elsey against the Postal Telegraph Company to recover damages for error in the delivery of a telegram. Defendant appeals from a judgment for plaintiff.

Argued before VAN HOESEN and BOOKSTAVER, JJ.

*A. W. Kent*, for appellant. *Beandy & Hatch*, for respondent.

VAN HOESEN, J. A Mr. Canham sent by the Postal Telegraph Cable Company, from Port Huron, a dispatch ordering the shipment to him of 5,000 oysters. Mr. Canham wished to send the dispatch to a Mr. P. Ellsworth, an

oyster dealer of the city of New York, but, being unable to recall the name of Ellsworth, wrote in its stead the name of Elsey, so that the dispatch was addressed to P. Elsey, New York. In telegraphic characters the letter "P" is represented by five dots, and the letter "H" by four dots, and the omission of a single dot resulted in the changing of the address from P. Elsey to H. Elsey. The person in charge of the New York office consulted the New York directory, and, not finding any H. Elsey in its list of names, concluded that the dispatch must be intended for John Elsey, a fish and oyster dealer of Washington market, and therefore altered the address by changing the letter "H" into the letter "J." The dispatch, so altered, was delivered to John Elsey, who filled the order, and shipped the oysters to Canham, who refused to receive them, saying that the man he dealt with is P. Ellsworth, whose name he then recollected. The oysters were spoiled; and Elsey brings this action against the postal company, claiming the value of the oysters, together with the cost of transportation.

According to the English decisions, the defendant would be entitled to judgment in its favor. The English courts hold that the liability of the telegraph company to the recipient of a message could arise only from the negligence of the company; that there can be no negligence unless there be a duty owing by the party in default to the party aggrieved; and that such duty must arise either out of a contract or of some rule of law; that the sender has, but the person to whom the message is delivered has not, a contract with the company, so that the supposed duty does not arise out of contract; and that the law has not imposed upon the company any duty growing out of considerations of public policy. Said Baron BRAMWELL, in *Dickson* v. *Reuter*, 30 Moak, Eng. R. 1: "To hold that the duty is implied by law requires that the law shall be altered so as to make a person liable for a misrepresentation made carelessly, but without evil intent. But it is never laid down that the exemption from liability for an innocent misrepresentation is taken away by carelessness. It is argued that the consequences will be mischievous if this action be not maintainable. I am not of that opinion. If a person should be held liable for a negligent misrepresentation, made *bona fide*, a great check would be put upon many useful and honest communications, owing to a fear of being charged with negligence. The company is liable to the sender of the message, and that is a security for the proper delivery of messages, apart from the natural desire to carry on business properly, so as to gain customers." That view of the rights of recipients of messages has never been accepted in this country. In the early case of *De Rutte* v. *Telegraph Co.*, 1 Daly, 547, (decided in March, 1866,) it was decided that the recipient might maintain an action against a telegraph company for damages resulting from negligence in the transmission of a dispatch, and from that time to this the courts in most of the states have uniformly held the same way. The following are some of the cases in which persons who received messages without any contract with the telegraph company have been compensated in damages for injuries arising from the negligence of the company in transmitting dispatches: *Ellis* v. *Telegraph Co.*, 13 Allen, 226; *Rose* v. *Telegraph Co.*, 3 Abb. Pr. (N. S.) 408; *Harris* v. *Telegraph Co.*, 9 Phila. 88; *De la Grange* v. *Telegraph Co.*, 25 La. Ann. 383; *Aiken* v. *Telegraph Co.*, 5 S. C. 358; *Hadley* v. *Telegraph Co.*, 15 N. E. Rep. 849; *Wadsworth* v. *Telegraph Co.*, 8 S. W. Rep. 580; *Pearsall* v. *Telegraph Co.*, 44 Hun, 532; *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Telegraph Co.* v. *Dryburg*, 35 Pa. St. 298. Among the American text-books, the following assert that the recipient of a message, if damaged by an error negligently made by the company, may recover damages: Cooley, Torts, (2d Ed.) 775; Gray, Tel. § 65; Whart. Neg. § 758; 3 Suth. Dam. 314; Shear. & R. Neg. § 560; 2 Thomp. Neg. 847. The same reason for holding the company liable to the recipient of the message for negligence has not at all times been given by American courts and text writers. Sometimes it has been said that the principle enunciated in

*Lawrence* v. *Fox*, 20 N. Y. 268, controlled, and that the company and the sender of the message, when they contracted for the sending of the dispatch, did so with a view to the benefit of a third party, namely, the person to whom the message was sent. In such a conjuncture, the person whose benefit the contracting parties had in contemplation may maintain an action, if injured by the non-performance of the contract. *Hadley* v. *Telegraph Co.*, 15 N. E. Rep. 850; Shear. & R. Neg. § 560. In other cases the liability of the company is placed upon the ground that the company has a *quasi* public employment, and enjoys the benefit of the right of eminent domain, and that the multitude and importance of affairs daily transacted upon the faith of the intelligence it conveys makes it expedient to require that the business shall be done without negligence. Nowhere has the question been considered with greater breadth and clearness than in the opinion of Chief Justice DALY, in the *De Rutte Case*, *supra*, in which it is said: "If we leave out of view altogether the question with whom was the contract made, the defendants would still be liable to the plaintiff for putting him to loss and damage through their negligence in transmitting to him an erroneous message. The law upon this subject is as yet undefined, for the business is of recent origin. I have pointed out this distinguishing feature: that, though pursued for reward, it is designed for the general convenience of the public. Like the business of common carriers, the interests of the public are so largely incorporated with it that it differs from ordinary bailments, which parties may enter into or not, as they please. In the state of New York it is made by statute the duty of the companies to transmit dispatches from and for any individuals with impartiality and good faith. Common carriers are held to the responsibility of insurers for the safe delivery of the property intrusted to their care, upon grounds of public policy, to prevent frauds, or collusion with thieves, and because the owner, having surrendered the possession of his property, is generally unable to show how it was injured or lost. These reasons, which are the ones usually assigned for the extraordinary responsibility of common carriers, cannot be regarded as applicable to the same extent to telegraph companies; nor are there any reasons, in my judgment, why they should be held to the extent of insurers for the correct transmission of dispatches. As their business, however, is one that leads to their being intrusted with confidential and valuable information, especially in commercial matters, there are opportunities for frauds and abuses, which, in view of the relation they occupy to the public, make it necessary, upon grounds of public policy, that they should be held to a more strict accountability than ordinary bailees. As the value of their services consists in the message intrusted to them being correctly and diligently transmitted, it must be taken for granted that they engage to do so; and if there is unreasonable delay, or an error committed, it should be presumed that it arose from their negligence, unless they can show that it occurred from causes beyond their control." It seems to me that the better ground on which to place the liability of the company for negligence is that the law, from considerations of public policy, will, to quote the language of Chief Justice DALY, "take it for granted" that the company, by accepting the message for transmission, impliedly promises both sender and recipient that it shall be forwarded with care commensurate with the importance of the work.

Of the negligence of the defendant in this case there can be no question. No matter how good the motive of the man in the New York office,—and there can be no doubt that he honestly believed that he was acting for the best,—he had no right to alter the address so as to make it suit some name that he found in the directory. The defendant is liable, and the damages are— *First*, the value of the oysters; and, *secondly*, the cost of sending them to Port Huron. Judgment affirmed.

BOOKSTAVER, J., concurs.